

Villanova University School of Law

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2006

# Gonzalez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1827

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Gonzalez v. Atty Gen USA" (2006). *2006 Decisions.* Paper 583.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/583

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1827

NARCISO GONZALEZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES;
DONALD MONICA, DISTRICT DIRECTOR, US CIS;
SECRETARY OF DEPARTMENT OF HOMELAND
SECURITY,

Respondents

On Petition for Review of an Order of
The Board of Immigration Appeals
(No. A22-169-286)

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2006

Before: AMBRO and STAPLETON, Circuit Judges,
STAGG,[*] District Judge

(Opinion filed August 16, 2006)

_____

[*] Honorable Tom Stagg, Senior District Judge for the Western District of
Louisiana, sitting by designation.

OPINION

AMBRO, <u>Circuit Judge</u>

Narciso Gonzalez petitions for review of a decision of the Board of Immigration Appeals ("BIA") that affirmed a written decision of an Immigration Judge ("IJ") denying his request for cancellation of removal. The Government has filed a motion to dismiss the petition for lack of jurisdiction, and in the alternative opposes the petition on the merits. For the reasons stated below, we conclude in part that we lack jurisdiction to review the BIA's affirmance of the IJ's discretionary determination, and in part that Gonzalez's constitutional claims do not merit our granting his petition for review.

**I.**

Because we write for the parties, we only briefly recount the relevant facts. Gonzalez is a native and citizen of the Dominican Republic. He entered the United States as a nonimmigrant visitor in January 1976, and became a lawful permanent resident in November 1977. He is married to an American citizen with whom he has two adult sons.

Since his arrival in the United States, Gonzalez pled guilty to three state-law felonies: (1) a 1978 conviction in New York for attempted criminal possession of a weapon in violation of N.Y. Penal Law § 265.02, for which he was sentenced to probation and a fine; (2) a 1993 conviction in New York for attempted criminal possession of a weapon in violation of N.Y. Penal Law § 265.03, for which he was

sentenced to probation; and (3) a 2002 conviction in New York for criminal possession of a controlled substance in violation of N.Y. Penal Law § 220.06, for which he was sentenced to eighteen months to three years in prison. Gonzalez's criminal record also contains a 1985 misdemeanor conviction, following a guilty plea, for attempted grand larceny in the fourth degree in violation of N.Y. Penal Law § 155.30, for which he was sentenced to probation and a fine.

## A.     Proceedings Before the IJ

In December 2003, the Department of Homeland Security ("DHS") served Gonzalez with a Notice to Appear that charged him with being removable pursuant to two sections of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.: (1) as an alien convicted of a controlled substance offense pursuant to 8 U.S.C. § 1227(a)(2)(B)(i); and (2) as an alien convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). At a hearing before the IJ, Gonzalez admitted having been convicted of the crimes noted above, and the IJ deemed him removable based on the conviction of a controlled substance offense.

Gonzalez sought a discretionary grant of cancellation of removal based on his good character, the hardship on his family if he was removed, and the circumstances of his crimes. He testified that, upon his arrival in the United States, he was employed as a taxi driver and later as a limousine driver, and that he worked long hours to support his family. According to Gonzalez, his wife has diabetes and requires care, and his sons were enrolled in college. He stated that his first weapon possession offense stemmed from his

3

purchase of a gun to protect himself while driving his taxi cab, and that he did not know he was required to register the firearm. The grand larceny offense, according to Gonzalez, stemmed from the theft of a tail light from a car. Although he pled guilty, Gonzalez contended that he was innocent of the crime. With respect to the controlled substance offense, Gonzalez stated that police discovered 87 packets of cocaine secreted in the door panel of his limousine. Although he owned the vehicle and was driving it at the time the police stopped him (and no one else had access to it), Gonzalez stated that he did not know where the cocaine came from.

Gonzalez also testified that he lived with his wife and sons in New Jersey. His tax returns, however, listed an address in New York City, and upon questioning by the IJ, Gonzalez stated that he listed the New York address for tax purposes. His eldest son testified, however, that Gonzalez did not live with the family in New Jersey, but rather lived in New York and visited them often.

The IJ denied Gonzalez's request for cancellation of removal. He noted that several factors supported a favorable exercise of discretion, including that Gonzalez had been a lawful permanent resident of the United States since 1977, that his wife and two sons were American citizens and lived here, that he had a "long and stable employment history as a taxi and limousine driver," and that, according to his son's testimony, he was a "loving and caring father." The IJ weighed these "[p]ositive equities" against Gonzalez's four criminal convictions, including three felonies, and his testimony that he lived with his wife and sons and maintained an address in New York solely for tax

4

purposes when, in fact, he lived in New York and merely visited his family in New Jersey. The IJ concluded that Gonzalez "purposely misle[d] the court as to his domestic living arrangements." The IJ also noted that Gonzalez refused to take responsibility for possession of the controlled substance and continued to insist that he knew nothing of the cocaine that was found in the door panel of his car despite having pled guilty to knowing possession of cocaine. With this backdrop, the IJ concluded that Gonzalez's claim of innocence, in light of the facts surrounding the crime and his guilty plea, was not believable. Gonzalez's untruthfulness "not only reflect[ed] poorly on [him] but cast[] serious doubts on his rehabilitation, or at least his rehabilitative potential." The IJ thus held, despite the "serious consequences to family members [that] an order of removal causes" and the positive equities in Gonzalez's favor, that Gonzalez did not merit a discretionary grant of cancellation of removal.

## B. Proceedings Before the BIA

Gonzalez appealed to the BIA, claiming that: (1) the IJ's adverse credibility determination was unreasonable and not supported by evidence; (2) the IJ failed to consider adequately equitable circumstances weighing in Gonzalez's favor, and thus violated his due process rights; and (3) the hearing was unfair because Gonzalez did not understand English and did not have an interpreter, again raising a constitutional issue. The BIA affirmed the IJ in February 2005, albeit for somewhat different reasons than those given by the IJ. The BIA concluded that Gonzalez was statutorily ineligible for cancellation of removal because he had not satisfied the seven-year residency requirement

5

contained in 8 U.S.C. § 1229b(a)(2), and his 1984 conviction for attempted grand larceny was an aggravated felony, see 8 U.S.C. § 1101(a)(43), which also disqualified him from cancellation of removal pursuant to 8 U.S.C. § 1229b(a)(3). In any event, the BIA held that the IJ concluded correctly that Gonzalez did not merit a favorable exercise of discretion because he was not truthful at his hearing and refused to accept responsibility for his past criminal acts. As for Gonzalez's claim that language problems rendered his hearing unfair, the BIA noted that Gonzalez "repeatedly interrupted proceedings [before the IJ] in order to add information to the record, or to request that his application for relief be expeditiously heard," and concluded that "[this] type of consistent interaction with the court reflects someone who is following proceedings and understanding their import."

## C. Petition for Review

Gonzalez filed a timely petition for review by our Court, contending that: (1) the BIA erred in concluding he was statutorily ineligible for cancellation of removal; (2) the BIA violated his due process rights by affirming the IJ's adverse credibility determination; and (3) his alleged inability to understand English rendered his hearing fundamentally unfair. He moved for a stay of removal pending consideration of his petition, and the Government cross-moved to dismiss the petition for lack of jurisdiction. By an order dated March 21, 2005, we granted Gonzalez's motion for a stay of removal and referred to this merits panel the Government's motion to dismiss for lack of

6

jurisdiction.[1]

## II.

It is well established that we have jurisdiction to determine whether we have jurisdiction, a question over which we exercise plenary review. See Alaka v. Att'y Gen., __ F.3d __, 2006 WL 1994500, at * 2 n.8 (3d Cir. 2006) (citing Papageorgiou v. Gonzales, 413 F.3d 356, 357 (3d Cir. 2005)). We also subject any questions of constitutional or statutory interpretation to plenary review. See id. at *2. Because the BIA rendered an opinion that set forth grounds of decision independent of those relied on by the IJ, we review the BIA's decision and not that of the IJ. See Xie v. Ashcroft, 359 F.3d 239, 240 (3d Cir. 2004). To the extent the BIA adopted the IJ's reasoning (explicitly or implicitly) in disposing of Gonzalez's claims on appeal, however, we review the IJ's opinion. See id. at 242.

## III.

### A.     Jurisdiction

Under 8 U.S.C. § 1252(a)(2)(B)(ii), we lack jurisdiction to review the Attorney General's discretionary decision to deny cancellation of removal under § 1229b. The statute further states, however, that we have jurisdiction to consider "constitutional claims or questions of law" that arise from the Attorney General's decision. See 8 U.S.C.

---

[1] We note that Gonzalez also filed with the BIA a motion to reconsider, which the BIA denied on April 28, 2005. Gonzalez has not petitioned for review of this decision, and we therefore lack jurisdiction to consider it. See 8 U.S.C. § 1252(b).

7

§ 1252(a)(2)(D). As we recently explained in <u>Alaka</u>, "our jurisdiction is not barred merely because cancellation of removal is a discretionary form of relief"; insofar as a petitioner contends that the immigration court decided erroneously that he was statutorily ineligible for relief, the petitioner raises a question of law over which we have jurisdiction pursuant to § 1252(a)(2)(D). <u>See</u> <u>Alaka</u>, 2006 WL 1994500, at *10 n.26 (citing <u>Pinho v. Gonzales</u>, 432 F.3d 193, 203-04 (3d Cir. 2005) (emphasis omitted)).

The BIA committed two legal errors in deciding that Gonzalez was not eligible for cancellation of removal. First, it looked to the date on which he received permanent residency — November 11, 1977 — as the start of the seven-year period of continuous residence that terminated when he committed attempted grand larceny in October 1994. Under 8 U.S.C. § 1229b(a)(2), an alien seeking cancellation of removal must show that he "has resided in the United States continuously for 7 years after having been admitted in any status." This period terminates "when the alien has committed an offense referred to in section 1182(a)(2) of this title," 8 U.S.C. § 1229b(d)(1)(B); § 1182(a)(2) states that aliens who have committed crimes of "moral turpitude . . . or an attempt or conspiracy to commit such a crime" are inadmissible. There is no question that a theft offense like attempted grand larceny is a crime of moral turpitude, <u>see, e.g.</u>, <u>Nugent v. Ashcroft</u>, 367 F.3d 162, 165 (3d Cir. 2004), and thus the BIA correctly determined that Gonzalez's period of continuous residence for purposes of § 1229b(a)(2) ended in October 1984. But Gonzalez was admitted to the United States as a nonimmigrant visitor in January 1976, and thus, under the plain language of the statute (as the BIA itself has held), this date

8

should have been counted as the start of the period. See 8 U.S.C. § 1229b(a)(2) (stating that the alien must have "resided in the United States continuously for 7 years after having been admitted in any status" (emphasis added)); Matter of Blancas-Lara, 23 I. & N. Dec. 458, 459 (B.I.A. 2002) ("[U]nder the plain meaning of the statutory language, the respondent's period of residence after his admission as a nonimmigrant in 1986 . . . may be considered in calculating the period of continuous residence for purposes of [§ 1229b(a)(2)]."). Counting January 1976 as the start of the statutory period, Gonzalez obviously satisfied the seven-year requirement before he committed his crime of moral turpitude in October 1984.

The BIA also opined that Gonzalez's attempted grand larceny offense was an aggravated felony, which would disqualify him from cancellation of removal under 8 U.S.C. § 1229(a)(3) (stating that an alien seeking cancellation of removal must demonstrate that he "has not been convicted of any aggravated felony"). But, as the statute and Gonzalez's record of convictions make clear, Gonzalez pled guilty to a Class A misdemeanor. Although the BIA is correct that N.Y. Penal Law § 155.30 (the section under which Gonzalez was convicted) defines grand larceny in the fourth degree as a Class E felony, the BIA apparently ignored N.Y. Penal Law § 110.05(7), which states plainly that "[a]n attempt to commit a crime is a . . . Class A misdemeanor when the crime attempted is a class E felony." See also In re Wong, 25 A.D.3d 267, 268 (N.Y. App. Div. 2005) ("[A]ttempted grand larceny in the fourth degree in violation of Penal Law §§ 110.00 and 155.30(1) [is] a class A misdemeanor."); People v. Bergos, 170

9

A.D.2d 611, 612 (N.Y. App. Div. 1991) (same).

The plain language of 8 U.S.C. § 1229b(a)(3) limits the aggravated felony determination to the offense of <u>conviction</u>, and we have held that, for a conviction to be for an aggravated felony, the offense must ordinarily "be a felony under the law of the convicting sovereign." <u>Gerbier v. Holmes</u>, 280 F.3d 297, 313 (3d Cir. 2002).[2] The BIA therefore erred in treating the attempted grand larceny conviction as an aggravated felony, and we thus conclude Gonzalez satisfied the statutory prerequisites for cancellation of removal.[3]

---

[2] There is an exception for certain drug crimes under the "hypothetical federal felony" rule, by which a state-law misdemeanor involving controlled substances may be deemed an aggravated felony "'if it is analogous to an offense punishable under one of the federal acts specified in 18 U.S.C. § 924(c)(2), and the offense to which it is analogous is a 'felony' under federal law.'" <u>Gerbier</u>, 280 F.3d at 306 (quoting <u>Matter of Davis</u>, 20 I. & N. Dec. 536, 543 (B.I.A. 1992) (emphasis omitted)). Even if we were to assume, for the sake of argument, that the "hypothetical federal felony" rule has application outside the context of drug crimes, the BIA did not attempt to analogize Gonzalez's conviction to any federal felony; rather, it merely stated conclusorily that the conviction was an aggravated felony — a finding at odds with the state statute and the record of conviction. Under these circumstances, we are persuaded that the BIA erred on a legal matter.

[3] We pause to note that the BIA's errors in this case are cause for concern. It deemed Gonzalez statutorily ineligible for cancellation of removal (a holding fatal to his claim) for reasons that were obviously wrong. This is not a case in which there was an understandable error of interpretation. Rather, in deciding that Gonzalez failed to satisfy the seven-year residency requirement, the BIA either did not read the record (from which it was clear that Gonzalez arrived in the United States as a nonimmigrant in January 1976) or did not read the statute and its own prior decision in <u>Matter of Blancas-Lara</u>. With respect to the aggravated felony determination, it appears the BIA somehow missed the record of conviction and N.Y. Penal Law § 110.05, which clearly indicate that Gonzalez's crime was a misdemeanor.

10

If this was the end of the BIA's analysis, we would vacate its decision and remand for further consideration. Here, though, the BIA went on to explain that, in any event, the IJ's factual conclusions regarding Gonzalez's untruthfulness and failure to accept responsibility for his past crimes were correct and sufficient to justify the IJ's refusal to afford Gonzalez a favorable exercise of discretion. These are quintessential factual determinations, over which we have no jurisdiction pursuant to § 1252(a)(2)(B)(ii). Indeed, in reaching this question, the BIA apparently presumed that Gonzalez was eligible for cancellation of removal (despite having earlier held, erroneously, that he was not). Thus, sending this case back to the BIA to remedy its legal errors would be a fruitless exercise. Its determination that, ultimately, the facts supported the IJ's discretionary refusal to grant Gonzalez cancellation of removal is an independent ground of decision that we may not review, and we therefore have no choice but to conclude that its legal errors are harmless.

## B.     Due Process Challenges

Gonzalez's case might still merit a remand, however, if we determine that his hearing violated fundamental principles of due process. See, e.g., Cham v. Att'y Gen., 445 F.3d 683, 691 (3d Cir. 2006) (stating that an alien "[is] entitled, as a matter of due process, to a full and fair hearing on his application"). He contends that the IJ violated his due process rights in two respects: first, by not considering properly the positive equities in his favor and exaggerating the negative factors, and second, by not affording him an interpreter despite his inability to understand English. Neither argument is

11

persuasive.

First, as noted above, the IJ <u>did</u> consider several factors that weighed in Gonzalez's favor, including that Gonzalez had been a lawful permanent resident of the United States since 1977, that his wife and two sons were American citizens and lived here, that he had a "long and stable employment history as a taxi and limousine driver," and that, according to his son's testimony, he was a "loving and caring father." Gonzalez points out several other circumstances about which he presented evidence that are favorable to his request for cancellation of removal, such as his wife's medical condition, the financial hardship on his family if he is removed, his early release from prison due to successful completion of a rehabilitation program, and his commitment to leave the taxi and limousine business (which was connected to many of his past crimes). But we are not aware of a case (and Gonzalez cites none) that requires an IJ to list in his decision every positive factor that can be gleaned from an alien's evidence before deciding whether to grant cancellation of removal, nor do we think it prudent to establish such a rule in this case (especially since the IJ acknowledged Gonzalez's evidence of factors weighing in favor of cancellation of removal and carefully considered many of those factors on the record).

Moreover, the BIA concluded, and we agree, that the IJ appropriately considered several negative factors, including Gonzalez's lack of candor during the hearing and refusal to accept responsibility for his past crimes. We are underwhelmed by Gonzalez's argument on appeal that the IJ should have taken into account "the reality of the

12

harshness of New York's drug laws," — the argument being, we presume, that these laws effectively forced Gonzalez to plead guilty to crimes he did not commit to avoid a possible lengthy prison sentence. The IJ was under no obligation to revisit the circumstances of Gonzalez's drug conviction; indeed, his continued reliance on this argument merely reaffirms the IJ's conclusion that he remains unwilling to accept responsibility for his crimes, which certainly weighs against a discretionary grant of cancellation of removal. Nor are we persuaded by Gonzalez's argument that the IJ violated his due process rights by incorrectly characterizing his crimes as "drug trafficking," when in fact he was convicted of mere drug possession. Whatever error there may have been in the IJ's statement was cured by the BIA, which held that Gonzalez's "persistent denials of any responsibility for the 2002 conviction for possession of cocaine . . . led to a finding that [he] was not forthcoming with the court and supports the Immigration Judge's decision to deny [him] relief in the exercise of discretion" (emphasis added).

The argument regarding the lack of a translator is also unconvincing. We note that Gonzalez himself expressed his desire to the IJ to proceed in English (despite the availability of a translator at his initial hearing), and his counsel never requested an interpreter. Moreover, he does not cite a single instance where the record reflects his inability to understand the proceedings,[4] while the BIA noted several instances where he

---

[4] Gonzalez contends his answers to questions regarding his living arrangements — which the IJ found "purposefully mislead[ing]" — are evidence of his failure to

13

actively participated in those proceedings and demonstrated a functional command of English. Under these circumstances, Gonzalez's argument that the hearing was fundamentally unfair (and therefore a due process violation) is unfounded.

* * * * *

For the foregoing reasons, and despite the BIA's legal errors in deeming Gonzalez ineligible for cancellation of removal, we conclude that we cannot review the BIA's approval of the IJ's ultimate discretionary determination and are unpersuaded by the Gonzalez's due process challenges. We therefore dismiss the petition for review in part and deny it in part.[5]

---

understand English. The IJ concluded differently, noting that Gonzalez explained clearly that he maintained a separate residence in New York for tax purposes but lived with his wife and sons in New Jersey, even though his son testified that Gonzalez had not lived with them for many years. On this record, we cannot conclude that Gonzalez's testimony was the result of confusion due to his inability to understand English, rather than an attempt to mislead the IJ.

[5] The Government's motion to dismiss need not be decided, as it is now moot.

14